## Jacob R. Landis, Plff. in Err., *v.* A. P. Neff.

In replevin for goods obtained by an infant upon a false representation as to his age, and delivered by him to the defendant, his father, who alleges that the delivery to him was bona fide to pay a debt, the question whether

Cited in Schoeneman v. Weill, 3 Pa. Super. Ct. 119, 123, 14 Lanc. L. Rev. 66, and Ralph v. Fon Dersmith, 10 Pa. Sup. Ct. 481 490, 16 Lanc. L. Rev. 385.

NOTE.—Transfers of property between a parent and child are not in themselves fraudulent, but the fraud alleged must be proven as in other cases. Coleman's Estate, 193 Pa. 605, 44 Atl. 1085; Hummel v. Kistner, 182 Pa. 216, 37 Atl. 815; Fritz's Estate, 160 Pa. 156, 28 Atl. 642. And fraud must be shown on the part of both. Collins v. Cronin, 117 Pa. 35, 11 Atl. 869.

there was such fraud as to vitiate the defendant's title to the goods is, upon a conflict of testimony, a question for the jury.

In such an issue it is competent to prove that similar goods were obtained from others and delivered to the defendant in the same way.

· (Argued May 17, 1887.   Decided May 30, 1887.)

January Term, 1887, No. 116, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ.   Error to Common Pleas of Lancaster County to review a judgment on a verdict for the plaintiff in an action of replevin.   Affirmed.

At the trial before LIVINGSTON, P. J., the following facts appeared:

In the spring of 1883, G. G. Landis, a minor son of Jacob R. Landis, the plaintiff in error, engaged in the cigar business at Lima, Ohio.   In May of that year he went to A. P. Neff, the plaintiff below, in York county and purchased some cigars from him, two cases of which were shipped to Lima. It is contended by Neff that when young Landis got the cigars he represented that he had just attained his majority, that he was about to go into the cigar business at Lima, Ohio, and that his father and a man named N. N. Bender were backing him.   These representations, except the one as to his age, were true.

After the two cases of cigars had been received at Lima, the plaintiff in error, the father of young Landis, went to his son's place of business and received those cigars and some others, in payment of a note he held against his son.   Jacob R. Landis alleged that he knew nothing of his son's indebtedness for the cigars at the time he took them in payment of the note.   The cigars were at once shipped by Jacob R. Landis to his home at Rothsville, Lancaster county.   Young Landis did not pay Neff, and in the summer of 1883 the latter proceeded with other creditors by domestic attachment to make his money.

The proceedings having been instituted against G. G. Landis, the attachment was dissolved by reason of his infancy.   Upon the dissolution of the attachment Neff issued a writ of replevin for his two cases of cigars, which he alleged had been attached

So where a bill of sale is executed as in LANDIS v. NEFF, the evidence must show that the transaction was not bona fide.   Forsyth v. Matthews, 14 Pa. 100, 53 Am. Dec. 522.   The question is for the jury in case of conflict. Stull v. Weigle, 20 W. N. C. 98.

under the domestic attachment and were in the possession of Jacob R. Landis. He claimed to have a right to recover his goods, upon the ground that G. G. Landis had obtained them by fraudulent misrepresentations and he could follow them in the hands of Jacob R. Landis, the vendee of G. G. Landis. On the first trial the plaintiff below was nonsuited, upon the ground that as he had absolutely parted with his property by sale he could not maintain his suit; but the judgment was reversed (Neff v. Landis, 110 Pa. 204, 1 Atl. 177), and the case tried again.

The plaintiff and a witness testified to the representations as to age, etc., made by G. G. Landis and the shipment of the cigars by the plaintiff to him.

The witness, Rahauser, under objection and exception, testified as follows:

[Shown, "York Gazette," May 15, 1883.] "I saw the advertisement of G. G. Landis in this paper; I wrote him a letter to Lima, Ohio, sending him a sample; I sold him a case, 10,000 cigars, factory 480, brand 'Companion,' at $9 per 1,000; shipped them in the latter part of May, 1883, at York, to G. G. Landis, Lima, Ohio; he has not paid me for them; I am the same Reuben Rahauser who became a plaintiff in the attachment against G. G. Landis, for these cigars, which was dismissed by reason of his minority. He did not call on me; I wrote to him in consequence of that advertisement in the paper." Second assignment of error.

The plaintiff then offered the "York Gazette" containing the advertisement spoken of by the witness, as follows:

"Cigars wanted.——Wanted to buy two million York county cigars. For particulars address,

G. G. Landis,<br>Lima, Ohio."

Received under objection and exception. Third assignment of error.

The court also admitted in evidence, under objection and exception, the record of the domestic attachment in the court of common pleas of Lancaster county (Kraft v. Landis, Aug. Term, 1887, No. 40). Fourth assignment of error.

The court below charged the jury as follows:

This is an action of replevin. It is brought by A. P. Neff,

the plaintiff, against Jacob R. Landis, the defendant, to recover a quantity of cigars from Mr. Landis, of the different brands you have heard stated in the evidence, which the plaintiff says are his property and are in the possession of Mr. Landis, the defendant.

This action of replevin may be maintained whenever one party claims goods in possession of another party. Weaver v. Lawrence, 1 Dall. 156, 1 L. ed. 79.

In Pennsylvania replevin lies for the property of one in the possession of another, whether the claimant ever had possession of it or not, and whether his property be absolute or qualified, provided he has the right of possession. Harlan v. Harlan, 15 Pa. 507, 53 Am. Dec. 612.

But to maintain replevin the plaintiff must show either a general or special property in him, and the right of possession. Lester v. McDowell, 18 Pa. 91; Lake Shore & M. S. R. Co. v. Ellsey, 85 Pa. 283.

Whenever the owner has not parted with his property he can assert his right as well against an infant as an adult, and maintain detinue, replevin or trover therefor. Penrose v. Curren, 3 Rawle, 351, 24 Am. Dec. 356.

Where goods are sold to an infant on credit, and he avails himself of his infancy to avoid paying for them, the vendor may claim the goods as having never parted with the property in them, unless the infant has parted with them—sold them to a third party for a valuable consideration. 15 Mass. 359.

In the action of replevin a plaintiff must recover, if he recover at all, on the strength of his own title to the property he claims; he cannot recover by reason of the weakness of the title of his adversary. Dannels v. Fitch, 8 Pa. 495; Reinheimer v. Hemingway, 35 Pa. 432.

He must show either a general or a special property in himself, and must also show a right to possession of the property he claims, and that it was in possession of the defendant at the time of the issuing and service of the writ, sheriff's return, when defendant keeps property and gives bond. Lester v. McDowell, 18 Pa. 91; Lake Shore & M. S. R. Co. v. Ellsey, 85 Pa. 283; Cummings v. Gann, 52 Pa. 484.

In this case the defendant has entered the pleas *non cepit* and property; these two pleas may be properly pleaded together. By the plea *non cepit* the defendant avers that he did not take

the property of the plaintiff, and by the plea of property he avers that the property claimed by the plaintiff in this action is his, the defendant's own property, and not the property of the plaintiff, who is here claiming it.

Now it cannot be doubted that a minor who, under such circumstances as you have heard detailed before you, obtains the property of another by pretending to be of full age, and legally responsible, when in fact he is not, is guilty of a fraud by false pretense, for which he would be answerable criminally.

Where a contract is induced by such fraud as does not involve a public wrong, the adjustment of which is not against public policy, it is in general voidable only, not void; and the party defrauded may at his option confirm or repudiate it; the contract only becomes void after it has been avoided; and therefore in the case of a sale of goods induced by the fraud of the vendee, the vendor may, excepting in the cases mentioned, sue in assumpsit for the price, in affirmance of the contract, or in trover or replevin in disaffirmance of it.

But until the vendor has done some act to disaffirm the transaction the property vests in the vendee; and therefore it is that an innocent transferee for value takes the title, even as against the original vendor or owner. The mere fact that the contract may be afterwards rescinded does not affect its intermediate efficiency.

In the case before us there seems to be no doubt, from the whole evidence presented, that the title to the cigars sold and shipped by Neff passed to Landis, who bought them from Neff. The transaction presents all the requisites of a sale, and shows that the manifest design of the parties at the time was to pass the property as well as the possession to G. G. Landis; but if the jury believe from the evidence that the sale by Neff was induced by the artifice and fraud of G. G. Landis, then Neff would have a clear and undoubted right, on discovery of such fraud, to wholly repudiate the contract and proceed by replevin for the recovery and possession of his property, and to recover it also, provided G. G. Landis had not sold or transferred it to some other person bona fide, and for a valuable consideration.

This being the law, the facts are for you. If the jury believe from the whole evidence that G. G. Landis obtained the two cases of cigars from Neff by fraudulent representations and false pretenses; that Jacob R. Landis had knowledge that they

were so obtained; that he took them from G. G. Landis to cover up the fraud and prevent Mr. Neff from recovering his cigars or compensation for them, and did not obtain them from his son, G. G. Landis, as he and his son have testified bona fide, in good faith and for a valuable consideration; and that Neff's cigars were among those obtained by the defendant from his son, the verdict should be for the plaintiff, for the value of the two cases of cigars, with damages for their detention; which in cases like the present would be interest on the value of the goods, from the issuing of the writ of replevin, or the time of a demand for them and a refusal to deliver them.

But if the jury believe from the whole evidence that G. G. Landis did by means of fraud and false pretenses obtain the cigars from Neff, as Neff says he did, and that he subsequently after receiving them in Ohio, and before Neff discovered the fraud, or took any steps to repudiate the contract, sold and delivered the Neff cigars to his father bona fide, in good faith, for a valuable consideration, without any knowledge of such fraud on the part of the father, and received from his father his own note due from him to his father in payment, the verdict must be for defendant.

Or if the jury believe that all the fraud alleged against G. G. Landis by Mr. Neff has been proved by the evidence, and believe that the cigars he bought of Neff were sold and delivered by him to Stroble & Co. at Massillon, Ohio, and that none of Neff's cigars were among those obtained by Jacob R. Landis from G. G. Landis, the verdict must be for the defendant (for in such case the plaintiff cannot recover in this action), with such damages for their detention as is just, which in this case would be interest on the money from the beginning of this suit.

Or if the jury believe that all the fraud alleged against G. G. Landis has been proved, and also believe that the cigars sold by Neff to G. G. Landis were among the cigars obtained by Jacob R. Landis from G. G. Landis, but are satisfied that Jacob R. Landis obtained them from his son, as he and his son say he did, in good faith, for a valuable consideration, and in payment of money actually due and owing by G. G. Landis to him, and that the notes showing such indebtedness were given up by Jacob R. Landis to his son, without any knowledge by the defendant of the alleged fraud on the part of G. G. Landis, and before Neff had taken any steps to repudiate the contract and recover his

cigars, your verdict should be for the defendant, for in such case plaintiff could not recover in this suit.

Fraud must be proved, we would repeat, to the satisfaction of the jury; it is never presumed. The frauds alleged were that G. G. Landis, not of age, alleged that he was of age and had Bender and his father backing him. Were these representations made? If so, were they false? Did his father and Bender back him—was his father not responsible for the newspapers or how many cigars he got in pursuance of them? Is there any evidence to satisfy you that the father knew of any fraud when he got the cigars from his son? Because he didn't appear in the attachment suit you cannot decide against him in this case. He does appear in this suit and claim.

You will remember the evidence as to his giving his son about $800 that spring to go into business. If you believe he did this, had he not a right to expect the cigars he found there were paid for?

Did the father buy the cigars from G. G. Landis, as he says in good faith, at $9 per thousand, to pay the debt of his son to him and give him up the notes he held against him showing his debt to the father?

Did Jacob R. Landis ever get any of Neff's cigars into his possession, or did G. G. Landis sell these cigars to Stroble & Bro. at Masillon, and receive pay from them for these cigars?

You will remember that the father is not liable for contracts of this character made by his son; and that if he loans him money, he would have a right to buy in good faith from him any goods or articles of commerce he had in payment of his debt or claim in the same manner that Neff or any stranger would.

The defendant submitted, *inter alia,* the following point:

"3. Under all the evidence in the cause the verdict should be for the defendant."

*Ans.* We have stated the law so fully, clearly and fairly that the jury cannot mistake their duty. We, therefore, leave the case with the jury. They will find their verdict in accordance with the law and evidence. First assignment of error.

Verdict and judgment were for the plaintiff, for $162.50.

*Brown & Hensel* for plaintiff in error.

*H. H. McClune* and *J. W. Johnson* for defendant in error.

PER CURIAM:

An examination of the evidence convinces us that it presented a case proper for the jury. There is certainly some evidence tending to prove fraud. In the conflict of evidence the jury is the proper tribunal to weigh it and to determine what it proves. We discover no error in the admission of evidence or in the charge.

Judgment affirmed.