# Joseph Schoeneman & Co. *v.* Joseph L. Weill and Jennie Levy, Appellants.

*Evidence—Wide latitude as to fraud—Question for jury.*

In the investigation of an alleged fraudulent transaction a wide door is open to the admission of evidence, and under the facts in this case there being certainly some evidence tending to prove fraud, it was proper to submit the whole question to the jury. The credibility of the witnesses being clearly for the jury.

*Husband and wife—Execution—Interpleader—Evidence of husband's declarations.*

In a feigned issue between the husband's vendor, claiming to rescind on the ground of fraud, and the wife as execution creditor of the husband, evidence is admissible as to conversations with and declarations by the husband in the absence of the wife notwithstanding she is a party to the suit.

The wife had control of her execution, and in seeking to enforce it against property claimed by a stranger to the writ, must maintain her husband's title to the goods. As execution creditor she can have no higher title to the goods than the husband at the time of levy. If he has no title, she has no right to sell.

Argued Nov. 12, 1896.   Appeal, No. 85, Nov. T., 1896, by defendants, from judgment of C. P. Lancaster Co., Jan. T., 1896, No. 68, on verdict for plaintiff.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Interpleader to try right to certain personal property levied upon by the sheriff on fi. fas. to January term, 1896, Nos. 53 and 54.

The following facts were stated in the opinion of the Superior Court.

" On September 10, 1895, Joseph Schoeneman & Company of Philadelphia sold and delivered to Louis P. Levy of Lancaster, Penna., children's, boys' and men's suits of the value of $517.   On December 14, 1895, Levy confessed judgment in the sum of $850 to his brother-in-law, Joseph N. Weill, and about the same time one to Jennie Levy, his wife, for $1,200.

" On these two judgments executions were issued to Nos. 53 and 54 of January term of 1896 of Lancaster county, and the stock of merchandise of Louis P. Levy taken in custody by the sheriff.   Soon afterwards Joseph Schoeneman, for appellees, identified some of the goods sold in September previous, and gave notice that the plaintiff rescinded the sale on account of the fraudulent representations inducing it, and claimed the property in a notice to the sheriff, on whose petition this issue was framed to try the right to the property scheduled.   The jury found for the plaintiff and defendants appeal.

" There are thirteen assignments of error.   The first to eighth inclusive are directed to the admission of testimony offered by plaintiff to show a fraudulent design in securing the plaintiff's property, objected to by defendants without assigning any reason in support of the objection, but intended to be covered by one statement: 'Defendants object to any conversation with L. P. Levy or any declarations he may have made to the witness in the absence of his wife, she being a party to this suit.'

" The issue as framed and tried in the court below was limited to the question of good faith in the purchase by Levy of the bill of September 10, 1895, of plaintiffs.   The integrity of the judg-

ments of Joseph L. Weill and Jennie Levy was not questioned; for the purpose of the trial they were admitted to be honest and correct. The contention was, that the goods scheduled in plaintiffs' statement had been secured by Louis P. Levy under such false and fraudulent representations as warranted Schoeneman & Co. in rescinding the sale and claiming the property; that title to it did not pass, and the property as against Levy and these defendants was in the plaintiffs."

Verdict for plaintiffs. Defendants appealed.

*Errors assigned* were (1–7) admission of evidence of conversation with L. P. Levy, defendant in the execution, of declarations which he made to the witness in the absence of his wife, she being a party to this suit; (8) admission of evidence as to value of the property; (9) swearing the jury and going to trial, there being two defendants, one of them being the wife of a man who may be called as a witness; (10) answer to plaintiffs' point, reciting same; (11, 12) answers refusing defendant's first and second points, requesting binding instructions for defendants, reciting same ; (13) in charge where it was said : " If there was any indebtedness at the time then of course your verdict will have to be for the plaintiffs."

*B. F. Davis*, for appellants.—The evidence objected to is inadmissible upon any theory, citing as to the first seven assignments of error : Martin v. Rutt, 127 Pa. 380 ; Burrell Twp. v. Uncapher, 117 Pa. 353 ; Johnson v. Watson, 157 Pa. 454.

The old rule which prevents husband and wife testifying " against each other " is not relaxed by either statute or decision : Rowley v. McHugh, 66 Pa. 269 ; Pleasanton v. Nutt, 115 Pa. 268 ; sec. 4 (c), Act of May 23, 1887, P. L. 158 ; Tisch v. Utz, 142 Pa. 186 ; Leedam v. Leedam, 160 Pa. 273.

There was no evidence that Levy was indebted to his wife, to Weill or any one else at or before the time of the sale, and it was error to have left the question to the jury : Selser v. Roberts, 105 Pa. 242 ; Railroad Co. v. Bock, 93 Pa. 427 ; Urket v. Coryell, 5 W. & S. 60.

*W. U. Hensel*, with him *J. Hay Brown*, for appellees.—We do not agree that the point thus raised and comprehended in

numerous of the assignments of error has ever been "passed upon in an interpleader issue by the Supreme Court." Certainly not in Martin v. Rutt, 127 Pa. 380, nor in any other case cited in appellants' brief, and we are quite confident when it comes to be passed upon it will not be decided in the way our adversary contends for.

But this identical question has been considered and disposed of by the Supreme Court of Pennsylvania in a case not cited in appellants' paper-book, although it is a recent one, decided since the act of 1887, long after Pleasanton v. Nutt, 115 Pa. 266, and a case with which the distinguished counsel for appellants is quite familiar, for he was, if not of counsel, one of the parties in Norbeck v. Davis, 157 Pa. 403 (1893).

OPINION BY ORLADY, J. December 7, 1896, (after stating the facts as above) :

There was no controversy between husband and wife as to these goods. He did not make claim of title to them. The dispute was between his creditors as to whether he ever had title, and the evidence was properly received under authority of Norbeck v. Davis, 157 Pa. 403.

Louis P. Levy was not called as a witness, and to exclude proof of the representations made at the time the goods were secured would open wide the door to successful fraud, and place in the hands of the fraudulently disposed the power of securing property through conspiracy with his wife, and at the same time prevent any investigation of the fraud. This is not the law and is contrary to its policy.

He was the actor in the alleged fraud. It was competent to show just what he did, and its effect in securing the property. Any other rule would enable a scamp to transfer the fraudulently secured property to his wife through the medium of a confessed judgment and friendly process, and withdraw it from reach of an honest creditor.

She had control of her execution and in seeking to enforce it against property claimed by a stranger to the writ, must maintain her husband's title to the goods. As execution creditor she can have no higher title to the goods than her husband at the time of levy. If he had no title, she had no right to sell.

The court properly limited the inquiry of the jury to this

one question: " These judgments are not attacked at all in any way. It is not necessary that they should be. They may be fraudulent for anything we know or care in this suit. The simple question here is whether the title is in Schoeneman & Co., or in Levy."

The ninth assignment, relating to the jury being sworn and going to trial, with Joseph L. Weill and Jennie Levy as defendants, " there being two defendants, one of them being the wife of a man who may be called as a witness," is not to be seriously considered, as the suggested danger did not arise. Levy was not called as a witness, and it could not make any change in the case in the view taken as to the character of proof. Further, the issue was so framed without objection.

The tenth assignment is to the answer to plaintiff's point submitted: " If the jury believe from the evidence that when Levy made the written statement of September 5, 1895, on which he procured the goods, he was indebted to his wife, to Weill, or to any one else, his answer was false and the goods were obtained by fraud, and the verdict should be for the plaintiff." The answer to which was, " That, we say, would be true. We answer that in the affirmative. If the jury are satisfied from the whole evidence that these statements, or any of them, with reference to his indebtedness were false, then he obtained these goods by fraud and false representations."

In the investigation of alleged fraudulent transactions, a wide door is opened to the admission of evidence, and under the facts in this case it was proper to submit the whole question to the jury. The credibility of the witness was clearly for the jury.

The eleventh and twelfth assignments relate to the charge of the court in submitting to the jury the question of fraud. There is certainly some evidence tending to prove fraud. The jury is the proper tribunal to weigh it, and determine what it proves: Landis v. Neff, 9 Atl. Rep. 926. This question was fairly submitted to the jury. We discover no error in the admission of evidence, nor in the charge. The judgment is affirmed.