## Perlman & Co. *v.* Sartorius & Co., Appellants.

*Contract—Sale—Place of sale.*

If no place be designated by the contract, the place of sale is the point at which goods ordered or purchased are set apart and delivered to the purchaser, or to a common carrier who for the purpose of delivery represents him.

*Lex loci contractus—Fraudulent insolvency—Sale—Title.*

A resident of Maryland, being in Pennsylvania, sold goods then in Maryland to a resident of Pennsylvania. Subsequently the terms of sale were modified by letters written from their respective states. *Held*, that the contract was a Maryland contract and was governed by the law of that state and a sale to one who knows himself to be insolvent passes no title.

*Evidence—Declarations of defendant in execution.*

In order to prove that a purchaser knew that he was insolvent when he made a purchase, declarations as to his prior insolvency made by him after his goods were levied upon, are admissible.

Argued Feb. 28, 1894. Appeal, No. 224, Jan. T., 1894, by defendants, from judgment of C. P. Berks Co., No. 65, March T., 1893, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ. Affirmed.

Sheriff's interpleader to determine ownership of property seized as property of one Frame but claimed by plaintiffs. Before ERMENTROUT, P. J.

The facts appear by the opinion of the Supreme Court.

Plaintiffs proposed to show on the trial that the day after the execution there was a conversation between Mr. Frame and Mr. Reiling, Mr. Frame stating to Mr. Reiling that he had been going from bad to worse; he ought to have failed two years ago; this for the purpose of showing knowledge of insolvency in regard to Mr. Frame prior to February, 1893. Defendants objected: (1) That any declaration or admission by George C. Frame after his failure was incompetent to affect the defendants' rights. (2) That the evidence did not conduce to the purpose for which it was offered. (3) It was generally irrelevant. Admitted; bill for defendant. By Mr. Ruhl: " Q. What was the conversation between Mr. Reiling and Mr. Frame that you heard? A. Mr. Frame tried to explain the reason why he made

an assignment, stating that he ought to have failed two years ago, that things were going from bad to worse." [3]

Defendants' points were in part as follows:

" 3. If the jury find that this tobacco was shipped by the plaintiffs to George C. Frame under a sale made at Reading in October, 1892, modified as to certain of its terms by subsequent correspondence between the parties, then the plaintiffs cannot recover without showing trick or artifice on the part of Frame in accordance with the established law of Pennsylvania, and as there is no evidence of any trick or artifice in the case, then, under such circumstances, the verdict must be for the defendants. *Answer:* This point we refuse. There is no question for the jury to determine, whether this contract is under the laws of Pennsylvania or not. The court say to you, and the jury will take the law from the court, that this is a Maryland contract under the law placed here in evidence, concerning which there is no dispute. We say further to you that the place of sale is the point at which goods ordered or purchased are set apart and delivered to the purchaser, or to a common carrier, who, for the purpose of delivery, represents him. For example, a merchant in New York orders goods from a Boston house and they are consigned thence to him either by a carrier of his own selection, or in the usual course of trade, the transaction is an executed Boston contract. So that if a letter is sent from Reading to Baltimore ordering tobacco, as in this case, as appears by the letters in evidence, that would be a contract in Baltimore to be determined and settled by the laws of Maryland." [1]

" 4. There is no evidence in this case entitling the plaintiffs to recover." Refused. [2]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (1, 2) instructions; (3) ruling; quoting instructions and bill of exceptions and evidence.

*Isaac Hiester, Henry C. G. Reber* with him, for appellant.— The right of reclamation after delivery exists only when an action of deceit would lie : Smith v. Smith, 21 Pa. 370 ; Backentoss v. Speicher, 31 Pa. 324; Rodman v. Thalheimer, 75 Pa. 232.

Where the contract is either expressly or tacitly to be performed in any other place, the general rule is in conformity to the presumed intention of the parties that the contract as to its validity, nature, obligation and interpretation is to be governed by the law of the place of performance : Story on Conflict of Laws, § 280; 2 Parsons on Contracts, *586, *587; Bank v. Hall, 150 Pa. 472.

This case is ruled by Rodman v. Thalheimer, 75 Pa. 232.

A man to avoid insolvency is not expected to be able to put his hand in his pocket and pay every debt he owes; but he must be able to pay or provide for all his debts as they fall due in the usual course of business: 2 Kent's Commentaries, 490 ; Levan's Appeal, 112 Pa. 294.

The evidence objected to was improperly received : Pond v. Cruse, C. P., 10 W. N. 223 ; Martin v. Rutt, 127 Pa. 380.

*C. H. Ruhl, Daniel Ermentrout* with him, for appellee, cited, as to place of sale: Add. Cont. *197 ; 2 Pars. Cont., p. 582 ; Garbracht v. Com., 96 Pa. 452 ; Tayloe v. Ins. Co., 9 How. 390 ;

As to substitution of new contract for old one : Rogers v. Rogers, 139 Mass. 440 ; McNish v. Reynolds, 95 Pa. 486 ; Carrier & Baum v. Dilworth, 59 Pa. 406 ; Kelly v. Bliss, 54 Wis. 187 ; Bishop v. Russe, 69 Ill. 403 ; Farrar v. Toliver, 88 Ill. 408 ; Rollins v. Marsh, 128 Mass. 116 ; Teal v. Bilby, 123 U. S. 572 ; Allen v. Jaquish, 21 Wend. 628 ; Swain v. Seamen, 9 Wal. 271 ; Goss v. Nugent, 5 B. & Ad. 58.

The lex loci contractus prevails : Evans v. Cleary, 125 Pa. 210. It is given in Powell v. Bradlee, 9 G. & J. 220 ; Benesch v. Weil, 69 Md. 276.

As to admission of evidence : Cox v. Ledward, 23 W. N. 382 ; Souder v. Schechterly, 91 Pa. 83.

OPINION BY MR. JUSTICE GREEN, July 11, 1894 :

Referring to the testimony as to the original contract of sale made in October, 1892, it appears that Mr. Perlman was in Reading, Pa., at the vendee's place of business, and while there made the contract. Nothing was said as to any place of delivery of the tobacco, but the terms of the contract were that Frame was to pay " fifty cents a pound in bond," and was to pay the duty in cash. The tobacco was in Baltimore, Mary-

land, which was the plaintiff's place of business, and was to be shipped, and actually was shipped, from that city. As we understand, the net price of the tobacco was fifty cents per pound without any abatement for freights. This being the case, what was the place of delivery?

In 2 Benj. on Sales, at sec. 1022, it is said : " As to the place where delivery is to be made when nothing is said about it in the bargain, it seems to be taken for granted almost universally, that the goods are to be at the buyer's disposal at the place where they are when sold. . . . Kent says (vol. 2. p. 505, 12th ed.) : ' If no place be designated by the contract the general rule is that the articles sold are to be delivered at the place where they are at the time of the sale. The store of the merchant, the shop of the manufacturer or mechanic, and the farm or granary of the farmer at which the commodities sold are deposited or kept, must be the place where the demand and delivery are to be made, when the contract is to pay upon demand and is silent as to the place.' " In the footnote (10) to the foregoing text the writer says : " The place of delivery is that place where the goods are at the time of sale," and in support of this proposition a number of authorities are cited and commented upon.

Of course the ultimate destination of the tobacco was Reading in this state, but a delivery to the carrier in Baltimore must be regarded as a delivery under the contract.

In Schumacher v. Eby, 24 Pa. 521, we said : " A delivery of goods to a carrier, in pursuance of a contract of sale or lien, is a delivery to the vendee or creditor so far as to pass the title intended."

In Schmertz & Blakely v. Dwyer, 53 Pa. 335, a merchant in Bahia, Brazil, ordered goods from merchants in Pittsburg with instructions to send them " by first opportunity by vessel, either to this direct or via Pernambuco or then to Rio Janeiro." The goods were shipped by the vendors from Pittsburg to New York, with instructions to ship them to Bahia. Held that the property passed to the vendee on their shipment from Pittsburg.

In Garbracht v. The Commonwealth, 96 Pa. 449, the present Chief Justice said : " The place of sale is the point at which goods ordered or purchased are set apart and delivered to the purchaser, or to a common carrier who for the purposes of de-

livery represents him.   For example, a merchant in New York orders goods from a Boston house and they are consigned thence to him either by a carrier of his own selection, or in the usual course of trade, the transaction is an executed Boston contract."

This rule was followed in Commonwealth v. Fleming, 130 Pa. 139, in which we held that an order for liquor from a purchaser in Mercer county, to a dealer in Allegheny county, to be shipped C. O. D., was a sale in Allegheny county and was completed by a delivery to a common carrier in that county.

The case of Rodman v. Thalheimer, 75 Pa. 232, is cited by the appellants in opposition to the foregoing doctrine, but an examination of it does not show what the precise facts were in regard to the delivery, and the question does not seem to have been discussed by counsel.   It was incidentally stated, in the per curiam opinion of this court, that the contract in that case was not to be executed in New York, and that may have been so, as we are not informed as to the delivery.   But we cannot consider that there was any intention to overrule the numerous cases, and the long established law indicated in the authorities heretofore cited.

We therefore are of opinion that the learned court below was correct in holding that, as a delivery to the carrier in Baltimore was a delivery under the contract, and completed the sale so that the title passed while the tobacco was in Maryland, the law of that state controls the question now at issue.

There is no dispute that in this case none of the tobacco was delivered under the contract made in October, 1892.   On January 7, 1893, Frame wrote to the plaintiffs saying it was not suitable for him to pay the duty in cash, and unless they would sell on the same terms as in previous sales he would " have to let the lot go," and concluded, " so if satisfactory to sell on four months as heretofore, please let me know, and I will advise when to make the next shipment."

To this proposition the plaintiff assented by letter from Baltimore and after that the shipments were made.   We are of opinion that the contract under which the shipments were made was the one which was established by the two letters, one of Jan. 7, 1893, from Frame to plaintiffs, and the other from plaintiffs to Frame, dated Baltimore, Jan. 10, 1893, with so much of the original contract as remained unchanged.   The

duty was not to be paid in cash as under the agreement in October, and was to be included in the amount of the notes to be given at four months. This change was material and makes a new contract, and this new contract was made by letter from a party in one state to a party in another state, accepted by the latter in a letter written from the place of his domicile. In such circumstances it cannot be said that the parties were both in Pennsylvania at the time the contract was made. As the goods sold were physically in the state of Maryland, and the sellers lived there, and furnished the goods there, and completed the sale there by a delivery to a common carrier there, consigned to the purchaser in Reading, the contract was a Maryland contract and must be governed by the law of that state so far as the question at issue here is concerned.·

Proof was made on the trial as to what the law of Maryland is on the subject in controversy here, and we do not understand there is any dispute as to that matter. It was found by the jury upon the testimony and under the charge, and is therefore settled so far as the contention here is concerned. It is different from the law of Pennsylvania in that if the purchaser buys goods knowing his insolvency, and having no reasonable expectation of paying for the goods purchased, the purchase is void and does not pass the title. This feature would not be sufficient to avoid the sale in Pennsylvania unless there was also some trick, artifice or deception used to accomplish the purchase.

The question whether Frame was insolvent, and knew that he was insolvent, and had no reasonable expectation of being able to pay for the goods at the time they were ordered, was of course a question for the jury, which was carefully and correctly submitted to them by the learned court below. There was ample testimony in the case to support the plaintiffs' allegations in this respect, and it does not require any mention from us. We think the case was correctly tried and we dismiss all the assignments of error.

Judgment affirmed.