## Benjamin Labe & Son, Appellants, *v*. Lewis Bremer's Sons et al.

107    15
200 627

*Sale—Rescission of contract—Fraud.*

To enable vendors of goods to rescind a sale there must be artifice, trick or false representations made to induce the sale, and obtain possession of the goods.

An indorser on a promissory note, desiring to raise money on the note, requested a dealer in tobacco to discount it, saying to him " we are all right, we are not very rich, but all our notes will be met at maturity." The dealer agreed to discount the note on condition that the indorser would at the same time buy from him a lot of tobacco.  The note was paid at maturity, but the indorser failed before the tobacco was all paid for. *Held*, that the tobacco dealer had no right to rescind the sale on the ground that it was induced by false representations.

Argued March 4, 1895.  Appeal, No. 85, July T., 1894, by plaintiffs, from judgment of C. P. Berks Co., Aug. T., 1893, No. 112, refusing to take off nonsuit.  Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Sheriff's interpleader to determine the ownership of certain bales of Sumatra tobacco.  Before ERMENTROUT, P. J.

At the trial it appeared that plaintiffs were dealers in tobacco in the city of Philadelphia, and that the firm of Wisler & Whitman were cigar manufacturers in the city of Reading.  On April 19, 1893, Jacob Wisler, one of the firm, went to plaintiffs' place of business, and requested them to discount two notes upon which the firm were indorsers.  Plaintiffs agreed to discount the notes, provided they would purchase some Sumatra tobacco.  Jacob Labe described the transaction as follows:

" A. Jacob Wisler came to our place of business in Philadelphia, at No. 231 and 233 North Third street. Mr. Wisler had two notes which he wanted us to discount; one note was of L. F. Burroughs, Freeport, Illinois, and the other note was that of the J. N. Ricksecker Cigar Manufacturing Company, Kansas City, Missouri.

" Q. Give the amount of the notes? A. The Burroughs note was $1,100 and the Ricksecker $1,210. The Burroughs note had about sixty days to run and the other four months. We looked at the notes; I went and picked up the agency book of R. G. Dun and Bradstreet's, both of which we have, and I found Mr. Burroughs rated, but did not find the Ricksecker Cigar Company's name there at all; they were not in, and I told Mr. Wisler. Mr. Wisler saw us go to the books and I told Mr. Wisler that the Ricksecker Cigar Company was not rated. He says, ' Well, we are all right;' he says ' we are not very rich, but all our notes will be met at maturity.' Then we studied over the matter awhile; we then told Mr. Wisler about a lot of goods that had got damaged in bond by water flowing over them by an overflow of a pipe; we showed Mr. Wisler samples of the sound goods, and Mr. Wisler looked at them; finally he went down with me personally and examined these goods in bond, saw their condition, examined them and took several numbers of them, took perhaps half a dozen numbers of them, and then came up to the store. We agreed upon the price of it with the proviso that at first we wanted all the duty to be retained out of discount of these two notes, but afterwards it was agreed that $750 was to be retained to pay part of the duty on these goods, which was $1,034,—517 pounds it weighed. Before the transaction was closed, Mr. Wisler went out several times and went up street and came back again, and finally closed the transaction in that manner; $750 was to be retained out of the discount of these two notes and the balance was to be paid in firm notes at four and five months."

On cross-examination the same witness testified as follows: " Q. Did he say that he wanted to buy tobacco? A. I do not remember of his saying; no, sir. Q. Did your father ask him to buy tobacco? A. After the conversation about the notes he asked him about buying tobacco; yes, sir. Q. He would not discount the paper unless he bought the tobacco? A. That is

correct." He further testified: "Q. Do you not know that he said, 'I must have the money, I do not want the tobacco, and I must hurry to catch the four o'clock train,' and then finally said, 'If you will agree to take $750 on account of this purchase out of the proceeds of the notes, we will call the transaction closed?' A. I remember him saying that if he would take $750 then the transaction would be closed. Then we would not agree to that, and he went to go out and we called him back and closed the transaction."

There was also evidence that on January 11, 1893, Wisler had stated to plaintiff that his firm was worth $30,000 net, but it did not appear that he requested any credit upon the strength of this statement.

The notes which plaintiffs discounted were paid at maturity, but before all of the tobacco was paid for Wisler & Whitman failed. Defendants in the interpleader levied upon the tobacco in controversy, whereupon plaintiffs claimed it on the ground that they had rescinded the sale by reason of the false representations alleged to have been made by Wisler & Whitman. A feigned issue was awarded to determine the title.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned,* among others, were (1) entry of nonsuit, (2) refusal to take it off.

*Joseph L. Greenwald,* of *Greenwald & Mayer, Jacobs & Keiser* with him, for appellants.—The evidence was sufficient to show fraudulent misrepresentations: Bughman, Trustee, v. Central Bank, 159 Pa. 94; Rodman v. Thalheimer, 75 Pa. 232; Harner v. Fisher, 58 Pa. 453; Sloane v. Shiffer, 156 Pa. 62; Schofield v. Shiffer, 156 Pa. 65; Montgomery Web Co. v. Dienelt, 133 Pa. 595.

*Adam B. Rieser, E. H. Deysher* and *Ermentrout & Ruhl,* for appellee, were not heard but in their printed brief argued:—It requires artifice, trick, or false pretense, as a means of obtaining possession of goods to avoid the purchase. There must be bad faith—an intent at the time to defraud the seller: Smith v. Smith, 21 Pa. 367; Rodman v. Thalheimer, 75 Pa. 238; Bid-

dle v. Black, 99 Pa. 380; Wessels v. Weiss Bros., 156 Pa. 591; Bughman, Trustee, v. Central Bank, 159 Pa. 94; Perlman v. Sartorious, 162 Pa. 320.

PER CURIAM, March 18, 1895:

The defendants had caused a levy to be made upon certain Sumatra tobacco in the possession of Wisler & Whitman. The plaintiffs claimed to own it, and on their petition a feigned issue was awarded. They alleged, and to maintain the issue it was necessary for them to show, that they had been induced to sell the tobacco to Wisler & Whitman in the month of April, 1893, by fraudulent representations; and that upon the discovery of the fraud they had rescinded the contract and reclaimed the goods. The evidence however failed to disclose any trick, artifice, or false representations, made to induce the sale of the tobacco. The right to rescind did not exist unless the sale was brought about by fraud. Without proof of the fraud alleged the plaintiff had no case to submit to the jury, and the compulsory nonsuit was properly entered.

The judgment is affirmed.