# I. D. H. Ralph v. Charles A. FonDersmith, Trustee, Appellant.

*Sale—Rescission of—Fraud—Knowledge of insolvency.*

The insolvency of a vendee and his knowledge of it when the purchase is made are not alone sufficient to invalidate a sale or support an action by the seller in rescission of it.   There must be some trick, artifice or deception used, or conduct which reasonably involves a false representation to accomplish the purchase.

*Rescission of sale—Knowledge and assertion as to insolvency.*

There must be convincing facts in evidence to show with clear certainty that a condition of insolvency was well known to a purchaser of goods when he asserted solvency as a means of procuring a sale of goods to himself, otherwise his assertion does not have that aspect of fraud, or artifice, or misrepresentation which is required to abrogate an executed contract.

*Rescission of sale—Statement made to mercantile agency.*

A sale made on a mistaken rating by a mercantile agency founded upon information given to that agency by the purchaser, upon which such erroneous rating was based by the agency, will not be sufficient to justify a rescission of a sale on the ground of fraud, especially as in this case the statement made by the purchaser to the agency was not fairly given to the public in the report of the agency.

*Evidence—Rescission of sale—Res gestæ.*

In a feigned issue to test the rescission of a sale for fraud of purchaser, evidence is inadmissible of the representations made by a mere purchasing agent of the purchaser to other parties from whom goods were bought about the same time, there being no evidence that plaintiff knew of such sales or representations at the time he made the sale which he attempts to rescind, or that the agent was authorized to make any representations.

Argued Nov. 12, 1896.   Appeal, No. 80, Nov. T., 1896, by defendant from judgment of C. P. Lancaster Co., Aug. T., 1895, No. 66, on verdict for plaintiff.   Before Rice, P. J., Willard, Wickham, Beaver, Reeder, Orlady and Smith, JJ.   Reversed.

Interpleader in claim to property levied upon by the sheriff as the property of Amos B. Hostetter.   Before Brubaker, J.

The facts sufficiently appear in the opinion of the Superior Court.

Verdict for plaintiff.   Defendant appealed.

*Errors assigned* were among others (7–16 in part and 19) to the admission of evidence as to representations made by Hostetter, or on his authority to parties other than the plaintiff at or about the time when the sale was made by the plaintiff to Hostetter, which was admitted by the court for the purpose of showing the knowledge or intent of Hostetter at the time he is alleged to have committed the fraud in this case; (23, 26) to portions of the judge's charge, which portions are set out in the opinion of the Superior Court; (27) in not affirming defendant's point as follows: "Under the law and evidence in this case the verdict must be for the defendant."

*W. U. Hensel*, with him *J. Hay Brown* and *A. F. Hostetter*, for appellant.—In this case Ralph acted not on Hostetter's statement, but practically on his own judgment, or at best on that of the mercantile agency which was his own agent to get information; and he is, therefore, not entitled to relief under the decisions: Phipps v. Buckman, 30 Pa. 401 ; Hough v. Richardson, 3 Story, 659; Slaughter's Adm'rs v. Gerson, 13 Wall. 379.

Let it be conceded that false representations to a mercantile agency, with the intention to procure credit thereby and to mislead vendors, will void sales made by reason thereof (Eaton, Cole & Burnham Co. v. Avery, 83 N. Y. 31), it still remains that:

1. The fraudulent intent must be clearly shown; and,

2. The representation must be proximately connected with the transaction: Eaton v. Avery, 83 N. Y. 31; Macullar v. McKinley, 99 N. Y. 353 ; Victor v. Henlein, 33 Hun, 549.

As to the assignments which relate to the admission of evidence that Hostetter by his agent bought other tobaccoes at the same time as the Ralph transaction from other parties who relied on the Dun & Co. rating in extending credit to him such evidence is clearly admissible under the rule laid down in Neff v. Landis, 110 Pa. 204, inasmuch as there is no other evidence in this case of the falsity of the representations to Ralph and therefore their falsity could not be shown by representations to the Ohio people, even though these themselves had been false. Evidence of fraudulent representations must be clear and convincing: Wickham v. Moorehouse, 16 Fed. Rep. 324.

False representations to avoid the contract must be made for the purpose of inducing the party complaining to enter into the contract and must have been relied upon by him: Berringer v. Beecher, 25 N. W. R. 491; Humphrey v. Merriam, 20 N. W. R. 138.

. The 27th assignment of error relates to the insufficiency of the plaintiff's testimony to make out a case proper to go to the jury: Lowrey v. Ulmer, 1 Pa. Superior Ct. 425; Cooperage Co. v. Gaul, 170 Pa. 545; Perlman & Co. v. Sartorius, 162 Pa. 320; Bughman v. Bank, 159 Pa. 94.

*J. W. Johnson*, with him *B. F. Davis* for appellee.—The false representations made to the agency had the same effect as if they had been made to Hostetter by Ralph: Eaton v. Avery, 83 N. Y. 31; Cazeaux v. Mali, 25 Barb. 578; Newberry v. Garland, 31 Barb. 121: Bruff v. Meale, 36 N. Y. 200; Morgan v. Skiddy, 62 N. Y. 319; Com'th v. Call, 38 Mass. 515; Com'th v. Hayley, 48 Mass. 462.

It has nowhere at any time been contended by the plaintiff that the insolvency of the purchaser and his knowledge of it when he made the purchase were alone sufficient to invalidate the sale. But such fact and such knowledge are evidence to go to the jury with other facts to show the intent of fraud. This was clearly decided in Cooperage Co. v. Gaul, 170 Pa. 546.

OPINION BY ORLADY, J., February 16, 1897:

On February 21, 1895, I. D. H. Ralph sold twenty cases of leaf tobacco, of the value of $771, to Amos B. Hostetter, and ten days later delivered the property;· in payment for which, the purchaser gave notes, one of $400 and one of $371, due four months after date.

On May 14, 1895, Hostetter executed two notes, aggregating $94,238.05 in favor of Chas. A. FonDersmith. trustee for seven creditors of the defendant, on which judgments were entered, executions issued, and amongst other personal property, one thousand one hundred and eight cases of leaf tobacco (including the twenty cases sold by Ralph), were levied upon by the sheriff of Lancaster county, as the property of Hostetter.

Ralph gave notice to the sheriff, that he claimed the twenty cases of tobacco as his property, he having rescinded the sale, made February 21, 1895, which as he alleged was induced by the fraud practiced upon him.

This issue was framed on the petition of the sheriff to determine the title to the property at the time of the levy.

On the trial, the contention on plaintiff's part, was that Hostetter designedly, by trick and artifice practiced a fraud upon him and secured the possession of the twenty cases of tobacco under circumstances which justified him in rescinding the sale and claiming the property as his own.

He was examined as a witness and testified in chief:

" Q. Upon the faith of what did you sell the twenty cases of tobacco that you have spoken of ?   A. On his commercial standing as given by R. G. Dun & Co.   Q. In what book?   A. The January book of 1895.   Q. What did you do?   A. He is rated here ' wholesale Leaf Tobacco D–2.'   Also ' Actual Weight Leaf Tobacco Company.'   ' D–2,' means $40,000 to $75,000 capital rating; D—means $40,000 to $75,000 ; ' 2 ' in the general credit means ' good.'   Q. And you say it was upon the faith of that publication that you sold him the goods and parted with the same and shipped them to him ?   A. Yes, sir.   Q. Did you see Mr. Hostetter personally at all about it?   A. No, sir, this negotiation was done by correspondence ; I should say his agent came here and got the goods.   Q. The negotiations that led up to the sale that you made were not with Mr. Hostetter?   A. Not with Hostetter personally.   Q. With whom was it?   A. His man Perkins, ' Wm. H. Perkins.' "

Plaintiff called Z. T. Wobensmith, a reporter of R. G. Dun & Co.'s commercial agency, who testified, that, " the business of the agency was collecting information for the use of merchants in order that they may determine to what extent they may extend credit.   The information when collected is verified, as far as possible, in order to make ratings for the book, and also for the purpose of making up special reports to send to the subscribers."

The witness at the request of Hostetter, called September 5, 1894, at the office of the latter in Philadelphia, to secure information as to his financial standing.   " He had a statement prepared, which he stated to me, was prepared by his bookkeeper, Mr. Flood.   It was a statement which was said to have been taken from his books on July 16, 1894, at the last time when he made a settlement of his books ; and that statement wasn't signed, and upon my request to do so, asking him as to his will-

ingness to sign it, he said, 'Certainly,' and he did sign it in my presence.

" Mr. Flood went over the books with me to show that the statement as given was taken from his books. At the same time he showed me his books, to show that he was paying his bills promptly at that time, and meeting his obligations with ordinary promptness. That was about all the conversation that took place at that time. He stated, if necessary, he would be willing to qualify that the statement was correct."

The witness interpreted the rating " D–2 " to mean the same as given by the plaintiff.

The statement furnished by Hostetter is as follows :

## STATEMENT, 16th July, 1894.

Cash on hand :

| | | | |
|---|---|---:|---:|
| Farmers' Bank, Lancaster | . | $13,493.47 | |
| Mechanics' Bank, Philadelphia | . | 961.38 | |
| In Drawer . . . . | | 42.47 | —14,497.32 |
| Stock on hand as per inventory . | . | | 45,229.22 |
| Sundry debtors . . . . | | | 66,290.12 |
| Fixtures Philada. . . . . | | $1,345 | |
| Lancaster . . . . | | 550— | 1,895.00 |
| Bills receivable, not discounted . | . | | 8,551.64 |
| | | | $136,463.30 |
| Bills payable . . . . | | $68,723.72 | |
| Sundry creditors . . . . | | 15,758,62— | 84,482.34 |
| | | | $51,980.96 |

### A. B. HOSTETTER PERSONAL ACCOUNT.

| | | |
|---|---:|---:|
| Warehouse Lot 4 Tobacco Ave. Lancaster, Pa. . . . . . . | $4,500 | |
| House Lot 436 North Lime St. Lancaster, Pa. $8,500, Mortgage . . . | 4,500 | |
| Cash Value Life Insurance . . | 10,000 | |
| Building Assn. Cincinnati, Ohio . | . 2,000 | |
| Building Lots Lincoln, Neb. . . | 1,000— | $ 22,000 |
| | | $73,980.96 |

A. B. HOSTETTER.

132 North 3d Street, Philadelphia, Pa. 16, July 1894.

At the date the statement was given, Hostetter claimed he was about $11,000 better than what is shown in the statement.

This was taken to the office of the commercial agency, a copy made for publication in the records, and a rating for him made, based on the statement, which was published in the January book of 1895, viz: "A. B. Hostetter, wholesale Leaf Tobacco D–2, also Actual Weight Leaf Tobacco Co," and by aid of a key furnished to subscribers, the letter and number were made intelligible as stated by the plaintiff.

Depositions of five witnesses, taken on a commission in Ohio, were read under defendant's objection to show that purchases of tobacco were made in March, 1895, for Hostetter by one Perkins as agent.

Defendant's counsel objected to the depositions, but they were admitted, and showed that W. H. Perkins, acting for Hostetter, purchased from A. H. Reeder and four others about 380 cases of tobacco, worth about $6,000, in payment whereof Hostetter gave notes at four months.

In each of these five sales, the statement, as to Hostetter's financial standing, was orally made by Perkins, and all were made subsequent to the one by Ralph.

The reason given by the court, for receiving the testimony, showing the Ohio purchases was, "As to these purchases, the plaintiff is entitled to show what representations were made on or about the same time this fraud is alleged to have been committed, to show what representations Hostetter himself made, what representations his agent made, who was purchasing at the time for Hostetter, in connection with the statement that Hostetter himself gave to the representative of the mercantile agency, and what he said on the 21st of February to the mercantile agent. This is for the purpose of showing the knowledge or intent of Hostetter at the time he is alleged to have committed the fraud in this case."

But, there is not any evidence to show that Hostetter knew of the statements made by Perkins; or that Perkins was authorized in any way by Hostetter to make any statement as to his assets, liability, or financial standing. All that is shown is that Perkins was a purchasing agent for Hostetter.

The depositions fell far short of what was claimed for them either as to representations made by Hostetter, or on his author-

ity, and they should have been excluded. The 7, 8, 10, 11, 12, 16 in part, and 19th assignments are sustained.

Mercantile reporting agencies are now a business necessity, and are so generally relied upon in determining credit that their reports are entitled to great weight, particularly so when the schedule of assets and liabilities is furnished by the person seeking a rating.

To be of any practical aid, the rating should not only be intelligible but true in fact. In the case in hand, the schedule was retained by the agency, and its deduction, from its standpoint, given to the subscribers under the abbreviations of " D-2," which on view, suggested that it was incomplete—an abstract,—and that the agency had further information relating thereto.

To the inquirer, this meant that Hostetter was worth from $40,000 to $75,000 over and above liabilities, and was in good credit as a business man, which rating stamped him as a desirable customer.

Had the rating in the January book of 1895 shown, that in determining the standing of commercial merit fixed by the agency, the information on which it was based, was a schedule furnished by Hostetter September 5, 1894, in which his business books showed that, as of July 16, 1894, he had $66,290.12 of uncollected book accounts, without giving name, business, or financial standing of the debtors ; $84,482.34 of general debts without giving the character or maturity of his outstanding obligations ; $45,229.22 of inventoried stock in trade, without giving kind, quality, or condition of the property, each item of which must of necessity be of transient value and dependent on many contingencies, and at best could only be approximated ; without mention of the annual business transacted by him, his presumably fixed assets being a life insurance policy $10,000, an equity in a house $4,500, a warehouse $4,500 and some western town lots, he would not have been regarded as a desirable customer, without an investigation into the many things the rating did not disclose, and of which, even the schedule did not convey sufficient information to be of advantage in determining his financial responsibility.

Hostetter was not a subscriber to the agency, and had the right to expect, that they would advise the credit world of all

the facts contained in his statement, or at least enough to give the true meaning of the schedule. As the testimony shows, he invited an examination into his business affairs at the time of delivering the schedule, and held himself ready to swear to the correctness of his statement.

Ralph was a subscriber to the agency, and under its rules could have secured the full and detailed schedule as given by Hostetter, and could have withheld credit until he investigated.

The propriety of crediting a person worth from $40,000 to $75,000, over all liabilities, would be a very different matter from extending the same credit at four months, to one whose business debts were more than twice the amount of his inventoried stock, and who claimed, as an available asset, $66,290.12 of book accounts.

This statement could be absolutely and technically true, and yet not entitle one to any other consideration than as a cash customer.

In this case, there was no evidence adduced to show, that the statement was not true in entirety and detail; that the purchases made were unusual in amount or value, as compared with his general business; or that the indebtedness represented by the execution claiming the property in dispute, was not included in the schedule furnished by Hostetter.

The rating given by R. G. Dun & Co. was very misleading, and the schedule on which it was founded may have been entirely true.

The court said to the jury, 23d assignment, "We will say further to you as part of our instructions, it matters not, in considering the false statements—if they were false—of Hostetter, in reference to his financial standing, that they were not made directly to the plaintiff, in this case, they are sufficient to furnish ground for the rescission of the contract of sale by the plaintiff, if they were made to R. G. Dun & Co.'s agency, provided the plaintiff consulted the book of the agency, as he says he did, and was induced by the rating there given to make the sale and part with his property."

And in the 26th assignment, "I say there has been sufficient evidence produced to you from which you may find the knowledge and intent of Hostetter in the consummation of the purchase of this leaf tobacco in suit from Ralph, and from which

you may infer insolvency and his knowledge and concealment of his insolvency."

The charge as a whole was a virtual direction to find for the plaintiff.

We think the learned court erred in giving this effect to the rating in the commercial agency, as it placed the whole responsibility of the mistake in fact, and error of judgment of the agency, on Hostetter.

It was not shown that he ever saw the rating. It is true, he reaffirmed the truthfulness of his statement, but the statement and rating are manifestly inconsistent and contradictory, besides, the rating was the act of the agency, and in this, it acted as agent for Ralph and other subscribers in securing the information therein contained.

The testimony of Ralph clearly shows that the credit to Hostetter was given exclusively on the rating in the book, and not on the statement furnished the agency by Hostetter. It was not attempted on the trial to attack the truthfulness of the statement, or that Ralph made any further inquiry to verify or qualify its correctness.

The evidence failed to disclose any trick, artifice or false representations made to induce the sale, or that he withheld any material fact from his schedule which, while not full and clear, he submitted his books to explain and verify, and the agency could then see if he asserted too much or too little. The statement, with the examination of the books, appears to have been satisfactory to the agency. "The solvency of a manufacturer or a merchant, who has debts and assets, unless the assets are of a fixed and stable character, and very largely exceed the liabilities, is quite an uncertain factor, and very much a matter of opinion. The history of the business affairs of our country at this moment illustrates the truth of this proposition in an extraordinary degree. When numbers of the most extensive and apparently wealthiest manufacturing, transporting, mercantile and banking firms and companies are constantly prostrated by the want of ready means, or the want of a market for their commodities, or by a sudden and great diminution in the value of their assets, the uncertainty as to their solvency is about the only certain thing that can be said of them," is the language of our Supreme Court in Wessels v. Weiss, 156 Pa. 596 decided

October, 1893, and is a forceful description of conditions existing at the time of giving the Hostetter statement.

In Bughman v. Bank, 159 Pa. 94; Perlman & Co. v. Sartorius, 162 Pa. 320; Cincinnati Cooperage Co. v. Gaul, 170 Pa. 546; Lowrey & Co. v. Ulmer, 1 Pa. Superior Ct. 425, the law in Pennsylvania is well settled upon the subject of fraud on the part of the purchaser necessary to justify the vendor in rescission of the contract and even the insolvency of the purchaser, and his knowledge of it when he made the purchase are not alone sufficient to invalidate the sale or to support an action by the seller in rescission of it. There must be some trick, artifice or deception used, or conduct which reasonably involves a false representation to accomplish the purchase. The right to rescind the sale did not exist, unless the sale was brought about by fraud: Labe v. Bremer, 167 Pa. 15. In which case all the leading authorities are cited by counsel.

The indebtedness represented by the judgment of FonDersmith was unquestioned, and whether of old or of recent date does not appear, but these creditors represented claims in the aggregate but little more than the amount mentioned in the statement.

The possession amongst other property used in his business at time of the levy of over eleven hundred cases of tobacco shows him to have been actively engaged in buying and selling this article of trade, and the fact that he confessed the judgments, instead of having them secured by adverse process does not affect their integrity, nor is the price realized at the sale, standing alone, evidence of the extent of his assets at the time of making the statement.

The defendant had a right to rest his case on the testimony of the plaintiff and his witnesses, and as is said in Wessels v. Weiss Bros., 156 Pa. 592, "unless, therefore, there are convincing facts in evidence to show with clear certainty that a condition of insolvency was well known to a purchaser of goods when he asserted solvency as a means of procuring a sale of goods to himself, his assertion does not have that aspect of fraud, or artifice, or misrepresentation which is required to abrogate an executed contract. If an intending purchaser has a right to regard himself as solvent, and firmly believes that he is so, and therefore asserts his solvency to an intending seller

who sells him goods, his assertion of his solvency is certainly not fraudulent, even though insolvency actually arises before payment for the goods is made."

It would be destructive of many business transactions, to hold that an executed contract could be summarily rescinded, because the purchaser of the property had, months before, made a statement of his assets and liabilities to a commercial agency, the correctness of which he was willing at the time to verify by his solemn oath, and which was in fact true, even if subsequent events proved his judgment and opinion to have been erroneous.

We think, under all the evidence properly received, there was not sufficient to warrant its submission to the jury, and that the defendant's request for instruction (27th assignment of error),—" Under the law and the evidence in this case the verdict must be for the defendant," should have been affirmed.

The judgment is reversed, the costs to be paid by the appellee. A venire facias de novo is awarded.