# I. D. H. Ralph, Appellant, *v.* Charles A. FonDersmith, Trustee.

*Rescission of sale—Responsibility of vendee for false information to mercantile agency.*

A subscriber to a mercantile agency has a right to rely upon the fairness and honesty of the statements of the financial condition made by other subscribers to said agency. The reporting agency is the mutual agent of its subscribers. A false report of himself given by a subscriber to an agency may be an element of fraud affecting a claim to rescind a contract.

*Sale—Rescission—Fraud—Evidence—Feigned issue.*

In a feigned issue based on a rescission of a sale upon the ground of fraudulent misrepresentation it was error to reject evidence which if believed, tended to show (1) that the vendee had knowledge of a mistaken report of his credit furnished by a commercial agency, the effect of which mistake being that vendee knew that others would reasonably be misled by it and that it was founded upon his own errors and misstatements of fact; (2) that vendee knew at the time of the sale that he was insolvent and purposed to cheat and defraud plaintiff and others; (3) that the judgment under which defendant claimed title was fraudulent.

Argued Nov. 15, 1898. Appeal, No. 209, Oct. T., 1897, by plaintiff, from judgment of C. P. Lancaster Co., Aug. T., 1895, No. 66, on verdict for defendant. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by ORLADY, J.

Interpleader in claim to property levied upon by the sheriff as the property of Amos B. Hostetter. Before BRUBAKER, J.

This case was before the Superior Court on appeal on a former verdict and judgment and is reported in 3 Pa. Superior Ct. 618.

It appears from the evidence that Ralph, the plaintiff, sold certain leaf tobacco to Hostetter and received therefor certain notes in payment. Before the maturity of the notes Hostetter executed two judgment notes aggregating $94,238.05 to Fondersmith, trustee for certain creditors of defendant, on which execution was issued, and among other things the leaf tobacco sold by the plaintiff was levied upon by the sheriff. Plaintiff gave notice to the sheriff that he claimed the tobacco as his property, he having rescinded the sale made on February 21, 1895, which he alleged was induced by fraud practised upon him. An issue was framed on the petition of the sheriff to determine the title to the property at the time of the levy. On the trial the contention on plaintiff's part was that Hostetter designedly by trick and artifice practised a fraud upon him and secured the possession of the twenty cases of tobacco under circumstances which justified him in rescinding the sale and claiming the property as his own. The first trial of the feigned issue resulted in a verdict to the plaintiff which on appeal to the Superior Court was reversed for the reasons stated in 3 Pa. Superior Ct. 624. At the second trial plaintiff offered to prove that Amos B. Hostetter, the vendee and defendant in the execution, gave a false statement to Dun's Commercial Agency, and that he knew that " D—2," the rating which was given him by the agency, meant in the book a rating from $40,000 to $75,000 in good credit; that the plaintiff relied on the rating thus given ; that the vendee Hostetter knew at the time of the purchase that he was insolvent; that he had made certain statements after giving confessions of judgment tending to show both fraud and insolvency. Plaintiff also offered in evidence the judgments confessed both in Philadelphia and Lancaster. The plaintiff also offered to prove that Hostetter did not owe one W. M. Jacobs anything at the time the judgments in evidence were drawn and entered in court, one of them being in said Jacobs's favor for $25,000. Offers were also made of acts and words of the defendant for the purpose of showing a well defined intent to cheat and defraud plaintiff and other creditors. These offers were disallowed by the court and exception granted

to plaintiff and form the subject of twenty-five assignments of error.

Defendant presented the following point, which was affirmed:

Under the law and the evidence the verdict in this case must be for the defendant. [26]

*Error assigned* among others was (26) in giving binding instructions for defendant; error was also assigned to the rejection of evidence as indicated in the statement of facts.

*B. F. Davis* and *J. W. Johnson,* for appellant.—It is true that the false and fraudulent representations were made by Hostetter to R. G. Dun & Company, in September, 1894. They did not, however, reach Ralph for the purposes of this case until February 21, 1895, when the sale was made. At that time Hostetter sent his agent to purchase the goods. Ralph then consulted his mercantile agency reference book and "sold the goods and parted with the same and shipped them to him upon the faith of his commercial standing as given by R. G. Dun & Company, in their January book of 1895."

That was the same as though the false representations had been made by Hostetter direct to Ralph, for "false representations made to a mercantile agency for the purpose of influencing credit, constitute a fraud, and have the same effect as though made directly by a buyer:" Eaton v. Avery, 83 N. Y. 31; Cazeaux v. Mali, 25 Barb. 578; Newbery v. Garland, 31 Barb. 121; Bruff v. Mali, 36 N. Y. 200; Morgan v. Skiddy, 62 N. Y. 319; Com. v. Call, 21 Pick. 515; Com. v. Harley, 7 Metc. 462.

The case is a new one in its facts, but the principles by which it should be governed are well established: Eaton v. Avery, 83 N. Y. 31; The Genesee County Savings Bank v. Mich. Barg. Co., 52 Mich. 164; Mooney v. Davis, 75 Mich. 188; Hinchman v. Weeks, 85 Mich. 535; Holmes v. Harrigan, 20 Mo. App. 661; Lindauer v. Hay, 61 Iowa, 663; Neff v. Landis, 110 Pa. 204; Mundorff v. Wickersham, 63 Pa. 87.

The judgment upon which execution issued may be attacked under an interpleader issue: Hirsh v. Wenger, 182 Pa. 246; Tisch v. Utz, 142 Pa. 186; Yocum v. Kehler, 1 Walker, 84; Hartley v. Weideman, 3 Dist. Rep. 336.

Insolvency and knowledge of it at the time of the sale are

evidence to go to the jury with other facts to show the intended fraud, though they are not sufficient by themselves.

*W. U. Hensel*, of *Brown & Hensel*, with him *A. F. Hostetter*, for appellee.—The rating thus given plaintiff was Dun & Company's and not his own. It was given September, 1894, and as of July, 1894, whereas the indebtedness was not contracted until February, 1895; nor did the insolvency, if any existed, occur until May, 1895.

The seventh and eighth assignments of error are for the exclusion of testimony, showing admissions on the part of Hostetter that he was insolvent in May, 1895.

We submit that in an issue between Hostetter's execution creditors and his vendor this would be wholly irrelevant. Even if he preferred certain creditors or tried to " catch " other creditors in May, this would not, by any means, entitle Ralph to rescind a contract of February, touching which no fraud or misrepresentation was shown. The court was clearly right in rejecting this.

It would be destructive of many business transactions to hold that an executed contract could be summarily rescinded because the purchaser of the property had, months before, made a statement of his assets and liabilities to a commercial agency, the correctness of which he was willing at the time to verify by his solemn oath, which was, in fact, true, even if subsequent events proved his judgment and opinion to be erroneous : Ralph v. FonDersmith, 3 Pa. Superior Ct. 618.

The eleventh, twelfth, thirteenth and fourteenth assignments of error relate to the exclusion of certain depositions taken in Ohio to prove that, about the time Hostetter was buying goods on credit from Ralph, his agent was also buying goods from other parties throughout the country. This question has been disposed of by this court in Ralph v. FonDersmith, 3 Pa. Superior Ct. 623.

The eighteenth and nineteenth assignments of error relate to an attempt or an offer made to prove that the representations made by Hostetter in the statement of July and September, 1894, were not wholly true ; but these offers were excluded by the court below, on the manifestly proper ground that Ralph

did not pretend to be guided or affected by the statement made by Hostetter to the mercantile agency—which Ralph never said —but only by the garbled version of it which was given out by the agency to its customers and which this court has pronounced wholly "misleading," "incomplete," "inconsistent and contradictory."

Upon the whole case there was nothing whatever for the court to do except to charge the jury that the verdict must be for the defendant, unless it directly ignored the rulings of this court in this case when here for review. The opinion, as we have quoted it, proves incontestably that it is not the law of Pennsylvania that a rating by a mercantile agency can bind the man who furnishes it, unless it is furnished to the agency's customers in the form substantially as it is given by the person seeking and obtaining credit. Even if the agency, in this case, had furnished the transcript of Hostetter's books as he gave it of July, 1894, it was no proper basis for credit in February, 1895, and although the credit had been given by Ralph immediately after the statement was furnished by Hostetter, and there was no such remoteness of time as would relieve the debtor, there is, as has been pointed out, an essential difference between rating a man as worth from $40,000 to $75,000 over his liabilities and publishing a true statement, that the one who seeks credit has some $85,000 worth of debts, and that among his available assets are counted $66,000 of uncollected book accounts.

1. The statement as made by Hostetter is not shown to have been false. There is no evidence whatever that it was not substantially true.

2. The credit given was not extended until February, whereas the statement was made as of the preceding September and July.

3. The rating was not only unintelligible, but untrue in fact. The schedule was retained by the agency, and its own abbreviated deduction given to the subscribers was only an incomplete abstract, "very misleading," and "while the schedule on which it was founded may have been true," the abbreviated and incomplete rating itself suggested "that the agency had further information relating thereto, and, if Ralph proposed to rely on the rating, he was bound to make further inquiry." Failing to

do this, he incurred the risk of the rating being incorrect, or that Hostetter's condition had changed in the meanwhile, and he cannot now make FonDersmith and other bona fide creditors pay the results of his negligent and slipshod method of doing business.

OPINION BY ORLADY, J., July 28, 1899:

The first trial of this feigned issue resulted in a verdict for the plaintiff, which on appeal to this court was reversed for the reasons stated in 3 Pa. Superior Ct. 618, 624. On the second trial the learned trial judge affirmed a point submitted by the defendant, viz: "under the law and the evidence the verdict in this case must be for the defendant," and after judgment in accord with this instruction the plaintiff brings this appeal.

The evidence which was rejected under the offers, taken in connection with that which was admitted, presents a radically different state of facts than was adduced on the first trial, and if believed would establish the plaintiff's right to rescind the sale of February 21, 1895. On the first trial the evidence showed that Ralph was a subscriber to the commercial agency and that Hostetter was not connected with it in any way. There was no evidence to show that the statement furnished by Hostetter was not true in entirety and detail, and the indebtedness represented by the judgments of FonDersmith was unquestioned. It was not shown that Hostetter ever saw the rating "D—2" as issued by the agency, nor that he knew its meaning. The evidence failed to show that any fraud, trick, artifice or false representation had been made to induce the sale, or that any material fact had been withheld from his schedule.

On the retrial of the case Z. T. Wobensmith, a representative of the R. G. Dun & Co. Agency, testified that Hostetter was a subscriber to this agency, and that, as such, he had a reference book in his place of business, and had made use of it from 1893 to the time of his failure in 1895, being entirely familiar with the book, its use, and everything contained in it. He states in his testimony that "I may say positively, once a week we had frequent conversations about mercantile business. We had often looked at the book together and discussed the ratings of various parties. I mean our reference book, that he was a sub-

scriber to at that time." The plaintiff offered to prove (1) that Hostetter knew that " D—2 " meant in the book, a rating of $40,000 to $75,000 and good credit; (2) that the report or statement made by Hostetter, upon which his rating was based, was false, in that he did not have the cash, sundry debtors, stock on hand, etc., as set forth therein; (3) that in the winter of 1894–1895 Hostetter was trading the tobacco he then bought for cigars for about one half their cost or value, and at same time bought cigars at $12.00 per 1,000 and sold the same at $6.00 to $6.50 per 1,000, and also sold tobacco for a price considerably below what it cost him; (4) that the judgments which Hostetter confessed to FonDersmith included over $36,000 to the use of W. M. Jacobs, and that he did not owe said Jacobs anything at the time the judgments were entered; (5) that Hostetter knew that he was insolvent at the time the goods were purchased. These offers were disallowed by the learned court below, and its rulings form the basis of nearly all of the assignments of error.

The rejected evidence related to proof of knowledge of the insolvency of Hostetter at the time of the purchase, and that he fraudulently asserted his solvency and used his rating as a trick, artifice and representation to induce the plaintiff to part with his goods.

A subscriber to a commercial agency has a right to rely on the fairness and honesty of the statements of the financial condition made by the other subscribers. The reporting agency is the mutual agent of its subscribers in securing and communicating the desired information, and the subscribers must, from the very nature of the business, know that the rating is a representation of financial standing as of near the date of the publication of the reference book, and the representation thus made is intended to reach and influence persons who are entitled to use the book. Let it be conceded that the schedule was retained by the agency, and that the report or rating was a garbled and misleading deduction from this schedule. The testimony of Wobensmith, if believed, made Hostetter a subscriber to the agency. He was thoroughly familiar with its workings. and it was acting for him as well as for Ralph.

The rejected evidence, if believed, would tend to show his knowledge of the mistake of the agency, the effect of that mis-

take being that others would reasonably be misled by it, and that it was founded upon his own errors and misstatements of fact. The statement and the judgment were directly attacked as false and fraudulent in the offers represented by the eighteenth, nineteenth and twentieth assignments, and the rejected evidence covered by the twenty-fourth and twenty-fifth assignments, if believed, would tend to corroborate the plaintiff's allegation. As was said by RICE, P. J., in Claster Bros. v. Katz, 6 Pa. Superior Ct. 487, " From the very nature of the transaction a fact not disclosed may be such that it is impliedly represented not to exist, and whilst under our decisions a buyer is not held to an implied representation of solvency, he may be fairly presumed to represent that he has not deliberately set a trap for an unwary seller." It was urged that Hostetter knew the important facts—his misstatements and the error of the agency—at the time of his purchase, and knowingly and fraudulently secured an advantage thereby. The question before us is not whether the statement was true or false, but, as to the admissibility of the rejected evidence as tending to show his knowledge of its falsity and his fraudulent use of the facts. The statement may have been true in every particular. He invited an examination of his affairs at the time when the means were readily accessible to disprove or establish its verity, and he was then willing to support it with his oath. Though the rating was unfair and misleading, and was founded upon the agency's mistake, it is contended that it was by him ratified and adopted; that his knowledge of the system of reporting credits would require that he practice good faith; and that he must have known that " D—2 " did not adequately and fairly represent the schedule. Standing alone " D—2 " was without any meaning, and it was competent to prove that, as between the subscribers, it was an intelligible part of a cipher code which had a mutually well understood signification. Ralph did not avail himself of his right to secure a copy of the statement as furnished by Hostetter, while Hostetter as a subscriber would know that such an inquiry was liable to be made, and under such facts it was competent evidence to submit to a jury to aid them in determining whether—if his insolvency be established—the rating was knowingly adopted by Hostetter as a trick, artifice, or deception used, or conduct which reasonably involved a false representation to

accomplish the purpose. The right to rescind the sale did not exist unless the sale was brought about by fraud. The insolvency of the purchaser and his knowledge of it are not alone sufficient to justify the vendor in rescission of his contract. The plaintiff must go further and prove a designed fraud which was successfully practised upon him, by and through which he was induced to part with his goods, and unless, therefore, there are convincing facts in evidence to show with clear certainty that a condition of insolvency was well known to the purchaser when he asserted solvency as a means of procuring the sale of goods to himself, his assertion does not have that aspect of fraud, or artifice or misrepresentation which is required to abrogate an executed contract. If the purchaser has a right to regard himself as solvent, and firmly believes that he is so, and therefore asserts his solvency to an intending seller, who sells him goods, his assertion of solvency is certainly not fraudulent, even though insolvency actually arises before payment for the goods is made : 3 Pa. Superior Ct. 618, 627, and cases cited.

If the sale was solely induced by fraud the execution creditor had no higher title to the goods than Hostetter had, and if the goods were identified, the contract could be rescinded and the execution creditor had no right to sell because Hostetter did not have any title to them : Schoeneman v. Weill, 3 Pa. Superior Ct. 119. The creditors have just the right, and no less, of their debtors. It is only because they have no higher one that plaintiff has the right to rescind at all. The purchaser's title to the goods, and consequently the creditors' right to appropriate them in payment of their debts, remains, until the defrauded vendor has made void that title by an effectual rescission of the contract which vested it in them : Schofield v. Shiffer, 156 Pa. 65. It was not necessary for the plaintiff to show that the Fon-Dersmith judgment was a fraudulent one in whole or in part, but it was competent for him to show that it was such, as a circumstance tending to show a general scheme on the part of Hostetter to obtain goods on a false credit, and after securing their possession have them seized and sold for his benefit on a voluntarily confessed judgment in the hands of a selected friend, with whom he colluded to effect his purpose. The judgment was good as against Hostetter. He could not assail it in this proceeding : Unangst v. Goodyear Co., 141 Pa. 127. It was

alleged to be without consideration as to $36,000 of its face, and was being asserted against this property as a part of the fraudulent plan of Hostetter to secure these goods, and if established as fraudulent it was some evidence of his original intention to defraud the plaintiff. For this purpose we think the evidence was competent, but for no other. It is true the fund was not in court for distribution, and the sole question was the title of Ralph through the rescission of his contract. It is well settled that a collusive judgment may be attached collaterally by judgment or execution creditors, who would otherwise be defrauded thereby. Whenever such a judgment, or the execution issued thereon, thus comes in conflict with the claims of creditors they may avoid its effect by showing that, as to them, it is a nullity: McNaughton's Appeal, 101 Pa. 550; Meckley's Appeal, 102 Pa. 536.

We see no reason for refusing to an owner the same measure and means of proof to determine his title to property which can be invoked by a creditor on distribution of its proceeds. An allegation of fraud opens a wide door to the admission of evidence, and in case of a conflict of evidence, a jury is the proper tribunal to weigh it, and to determine what it proves: Landis v. Neff, 9 Atl. Rep. 926. Upon the trial of questions of fraud, every circumstance in the condition and relation of the party, and every act and declaration of the person charged with the fraud may be given in evidence, if in the opinion of the judicial mind it bears such a relation to the transaction as is calculated to persuade the jury that the allegation of fraud is or is not well founded: Glessner v. Patterson, 164 Pa. 224.

In order to prove that a purchaser knew that he was insolvent when he made a purchase, declarations as to his prior insolvency made by him after his goods were levied upon are admissible: Perlman v. Sartorius, 162 Pa. 320. Every fact or circumstance from which a legal inference of fraud may be drawn is admissible: Cover v. Manaway, 115 Pa. 338; Wheeler v. Ahlers, 189 Pa. 138.

The testimony of Wobensmith laid the foundation for a wide range of investigation, and while some of the offers are faulty and indefinite, and their purpose not clearly stated they are repeated in different forms, and should be treated as progressive steps to establish the controverted fact. Enough was shown

and offered to require some explanation and denial on the part of Hostetter to prevent the rescission of the sale.

The eleventh, twelfth, thirteenth and fourteenth assignments of error are not sustained for the reasons given in 3 Pa. Superior Ct. 623. The other assignments are sustained. The judgment is reversed and the venire facias de novo awarded.