## Wessels v. Weiss Bros., Appellants.

[Marked to be reported.]

*Sale—Rescission—Insolvency—Fraud.*

Unless there are convincing facts in evidence to show with clear certainty that a condition of insolvency was well known to a purchaser of goods at the time when he asserted solvency as a means of procuring a sale of goods to himself, his assertion does not have that aspect of fraud

or artifice or misrepresentation which is required to abrogate an executed contract.

If an intending purchaser has a right to regard himself as solvent, and firmly believes that he is so, and therefore asserts his solvency to an intending seller who sells him goods, his. assertion of his solvency is not fraudulent, even though insolvency actually arises before payment for the goods is made.

It does not follow that, if a business man's obligations exceed his resources and he ought to have known the fact, his assertion of his ability to pay for an intended purchase was a trick or artifice to deceive the seller. It might be so or it might not, depending on the other facts in the case. But intrinsically and by itself alone it would not be. The evidence of fraud in this case was held not sufficient to submit to the jury.

Argued Jan. 17, 1893. Appeal, No. 172, July T., 1892, by defendants, Weiss Bros., from judgment of C. P. No. 4, Phila. Co., Dec. T., 1890, No. 487, on verdict for plaintiffs, G. Wessels & Co. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Sheriff's interpleader. Before WILLSON, J.

The facts appear by the opinion of the Supreme Court.

Defendant's points were, among others, as follows :

" 1. In October, 1890, when Ernest Weiss was asked in New York by G. Wessels if he could pay for the logwood he had bought, and he said he could, yet if you find from the evidence that in point of fact his obligations were then in excess of his resources and that he ought to have known this, his answer was not in itself a trick or an artifice calculated to deceive Wessels, and there is no further evidence from which you will be justified in concluding that he so intended, and therefore your verdict should be for the defendant." Refused.

" 3. That if you believe from the evidence (and it is not disputed) that Wessels was present at the sheriff's sale, at which the defendant's agent bought the logwood now in dispute, that the plaintiff then bid for it and did not give notice to the bidders (among whom were the defendants or their agents) that he claimed the logwood, he cannot now and in this action be allowed to assert that it was his property, and your verdict on this score should be for the defendant." Refused.

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*E. Hunn Hanson* and *E. F. Hoffman, C. B. Krein* with them, for appellants.—Insolvency was not in itself such a fraud on the part of the buyers as would justify the seller in rescinding a sale after delivery of the merchandise : Backentoss v. Speicher, 31 Pa. 324 ; Rodman v. Thalheimer, 75 Pa. 232. At the time of the representations Weiss was not insolvent and the whole case showed him to be entirely honest.

Plaintiff was estopped : Carr v. R. R., L. R. 10 C. P. 307 ; Seton v. Lefone, L. R. 19 Q. B. 68.

*Isaac S. Sharp, S. H. Alleman* with him, for appellee.—A man is chargeable civilly for the legitimate consequences of a false representation, whether he intended to defraud or not : Smith v. Smith, 21 Pa. 370. Although he may not have fully realized his condition : Dobson v. Warner, 11 N. Y. 760. See also Coal & Iron Co. v. Sargent, 2 Ind. Appellate Court Reports, 458 ; Bradberry v. Keas, 5 Marshall, (Ky.) 446.

Weiss asserted his solvency and stated that he did a cash business exclusively, and yet his insolvency came about by bad debts.

Under the feigned issue, it would have been improper for plaintiffs to have given notice at the sheriff's sale. It would have tended improperly to depress the price.

OPINION BY MR. JUSTICE GREEN, October 2, 1893 :

In this case the sale of the logwood by Wessels & Co. to E. Weiss & Co. was made in January, 1890, without any inquiry on the part of the vendors, or any assertion on the part of the vendee, as to the solvency of the vendee, or his ability to pay. There is no pretence that the sale was procured to be made by means of any imposition, trick, artifice or false representation of any kind. The logwood was sold to arrive at a later time, and did not arrive until in November, 1890. Prior to its arrival, in October, 1890, the plaintiffs, having received a report that the purchaser was given to drinking more than was prudent, sent for him, and he went to New York and then some conversation passed between them, which the plaintiff, Gerhart Wessels, thus describes : "I was not satisfied with his responsibility,

so I sent for him. He came to New York to my office when I questioned him in regard to it. Q. In regard to what? A. To his responsibility. I was not satisfied with it. I didn't wish to deliver it till I knew that it was all correct. He assured me that he was perfectly solvent, that he was able to pay for every bill he owed, everything he owed as well as this cargo, that he sold everything for cash and gave no credit. I still furthermore insisted that I wanted the warehouse receipts for these goods. I didn't want to trust him with them. The contract was then made that as soon as the cargo arrived he should give notes for it at thirty, sixty and ninety days and four months, and to give warehouse receipts for four different lots; as the notes were paid the lots were to be delivered to him; in the meantime to remain our property. . . .  Q. What did he say at that interview (Nov. 20th or 21st) if anything in reference to his solvency? A. That he was perfectly solvent, he said, to pay every bill that he owed, as well as this cargo. The following day he sent me the four notes, of which two were paid subsequently, and two were not paid."

The witness also testified that the cargo arrived on the first of November, that the purchaser claimed that the logwood was defective, that about the 20th or 21st of November he went over to see him at Wind Mill Island, where the purchaser's factory was located, and after examining the logwood he allowed $225 off the price for the defects in it, that he then demanded the notes and warehouse receipts, but the purchaser told him that if he gave such receipts it would injure his credit, and that he, the plaintiff, then " told him if he was perfectly solvent I would suspend the receipts for the present." The receipts were dispensed with and the notes were sent to the plaintiffs the next day.

Charles T. Wessels, the other plaintiff, testified, and gave a substantially similar account of the conversation. He said : " As near as I can recollect he stated that he was not a large man, not so large as Sharpless and some others ; he said that he did a small business ; that he did not give credit, but sold for cash, and that he was able to pay all his bills, and always had been, and that he could pay for this cargo that was coming in." The witness repeated this testimony on his further examination.

The defendant's account of the same conversation is not materially different from that of the plaintiff's. He was asked: " Q. What questions did Mr. Wessels ask you about your financial condition at this interview? A. He asked me whether I was able to pay for that wood, and I said, ' Yes, I am certain that I can pay for it,' as you would always say, of course, when you considered yourself solvent, which I did at that time, unquestionably. Q. Was that the only question he asked you? Did he ask you the amount of your capital or your assets? A. No, sir. I stated, as has been mentioned, ' I am not a very large dealer,' but I never said that I only would sell for cash, because such a thing is unknown in the commercial trade. You cannot sell goods for cash on delivery. Any merchant knows that. We have to give time, like everybody else in the trade. I mentioned that I was not as large as Sharpless, and of course Mr. Wessels was well aware of that fact."

The testimony of the two plaintiffs and the similar though not quite so strong testimony of Mr. Wheeler is all that was given on the trial, in support of the allegation of fraud, trick, artifice or misrepresentation on the part of the defendant, in the making of the sale. If this testimony was not sufficient to entitle the plaintiffs to rescind the sale at the time they made claim to the sheriff, of title in the goods, they have no case.

It must constantly be borne in mind that this is an attempt to rescind a sale, fully completed, the goods all delivered, the whole consideration delivered in precisely the way in which it was agreed to be delivered, to wit, four notes at thirty, sixty and ninety days, and four months, two of these notes paid as they matured, amounting to about four thousand dollars, and the rescission not being attempted until a year after the sale was made and three months after the delivery was completed. These are unusual and extraordinary circumstances in which to set up a right of rescission. As there is no pretence that there was any misrepresentation at the time the sale was made, the inquiry is limited to the interview that took place in October, and the subsequent one with Mr. Gerhart Wessels in November. At the last one in November nothing was said but a mere repeating of what was said at the October interview.

Now the allegation of the plaintiffs is that the defendant

said that he was solvent, that he was able to pay his bills, including the logwood, and that he sold for cash.   As to his selling for cash it was only a statement of his mode of selling goods, and contains in it nothing that can be regarded as material to the question of the inducement to make the sale. Whether he sold for cash or credit he would be entitled to the full proceeds of his sales, and whether he obtained those at an earlier or later day, his ability to pay his own debts would not be impaired.   This narrows the question to the single assertion of his solvency.   The solvency of a manufacturer or a merchant, who has debts and assets, unless the assets are of a fixed and stable character and very largely exceed the liabilities, is quite an uncertain factor, and is very much a matter of opinion. The history of the business affairs of our couutry at this moment illustrates the truth of this proposition in an extraordinary degree.   When numbers of the most extensive, and apparently wealthiest, manufacturing, transporting, mercantile and banking firms and companies, are constantly prostrated by the want of ready means, or the want of a market for their commodities, or by a sudden and great diminution in the value of their assets, the uncertainty as to their solvency is about the only certain thing that can be said of them.   The highly successful manufacturing enterprise of to-day, may to-morrow be a total wreck in a business point of view.   So also is it with banks, scores of which have within the shortest time been obliged to close their doors and their business, their solvency never questioned until the moment of their failure.   In point of fact, hundreds of business enterprises which three months, or two months, or one month ago were in successful and prosperous operation, to-day are financial ruins.   Yet, would it be sound law, to permit the indiscriminate rescission of sales to such concerns, followed by delivery of the goods sold and part payment made, to prevail, because at the time of the sales or the deliveries their solvency was asserted by the persons negotiating the sales on their behalf?   Certainly not.   Unless therefore there are convincing facts in evidence, to show with clear certainty that a condition of insolvency was well known to a purchaser of goods at the time when he asserted solvency as a means of procuring a sale of goods to himself, his assertion does not have that aspect of fraud, or artifice or misrepresenta-

tion which is required to abrogate an executed contract. If an intending purchaser has a right to regard himself as solvent and firmly believes that he is so, and therefore asserts his solvency to an intending seller who sells him goods, his assertion of his solvency is certainly not fraudulent, even though insolvency actually arises before payment of the goods is made.

In Backentoss v. Speicher, 31 Pa. 324, we said : " Where there is a sale of goods and delivery of possession even though the buyer intends at the time not to pay for them and conceals his insolvency from the vendor, it is not a cheat that will avoid the sale. There must be artifice practiced such as was intended and fitted to deceive, to constitute a cheat."

In Rodman v. Thalheimer, 75 Pa. 232, we said : " The law in this state is not that insolvency and the mere knowledge of it are such a fraud as to set aside the sale and enable the seller to rescind, and to replevy the goods after they have come fully and fairly into the possession of the purchaser. It requires artifice, trick or false pretence, as a means of obtaining possession, to avoid the purchase. There must be bad faith—an intent at the time to defraud the seller. Insolvency and a knowledge of it at the time of the sale are evidence to go to the jury with other facts to show the intended fraud, but standing alone will not operate to rescind after a possession fully and fairly acquired. The New York doctrine does not hold in this state."

The same ruling had been made in Smith v. Smith, Murphy & Co., 21 Pa. 367.

In the present case it is true there was an assertion of solvency, but we think it perfectly manifest from the testimony that the assertion was made in entire good faith, and there is no sufficient evidence that at the time it was made it was not true. The purchaser's bookkeeper testified that in January, 1890, his capital over and above all his debts was $7,086, and that on Nov. 1, 1890, the total of the liabilities was $32,475, and the assets were $32,487. Some losses had been sustained during the year which caused the shrinkage in his surplus capital, but he was still solvent in the sense that his assets were equal to his liabilities. This testimony was entirely uncontradicted, but to be effective for the purpose of setting aside an executed contract on the ground of an alleged insolvency as opposed to an assertion of solvency, it would be very necessary

to support the allegation by very clear proof of the falsity of the assertion at the time it was made. The same witness testified to large losses which occurred during November and December, which would account for the impairment of capital and assets, but which would not establish the untruthfulness of an assertion of solvency made in January and on November 1, 1890. Beyond all this, in making the statement of solvency, the defendant had a right to count upon the proceeds of the cargo of logwood which he was buying, and the profits to be derived from his business in dealing with it. Moreover he had previously bought a larger quantity of the same class of goods from the plaintiffs, amounting to about $9,000, and had paid them, in the course of his dealings with them, the entire amount of the debt then incurred. In addition to this, although the present lot of logwood was not delivered until November, 1890, he had already, in January, 1891, paid the first and second of the notes given at thirty and sixty days, each for upward of $2,000, and there is every reason to believe that if he had not been suddenly called upon to pay in cash a debt of $7,000 for money which had been loaned to him by a friend to carry on business with, he would have paid the other two notes given to the plaintiffs as they matured. He owed this same $7,000, and also the debt of $15,000 to his brothers, during the time he bought and paid for the previous lot of logwood, amounting to $9,000. Those debts did not interfere with his ability to pay for that lot, and it seems to us he had a good right to believe he could pay for this lot when he said he could do so. Upon a careful review of the whole of the testimony, we think the concluding declaration of the defendant's first point, that there was no other evidence, than his answer that he could pay for the logwood, of an intention to deceive Wessels by a trick or an artifice was right and should have been affirmed.

The remainder of the point is, that even if his obligations were then in excess of his resources and he ought to have known it, his assertion of his ability to pay for the logwood, was not, in itself, a trick or an artifice calculated to deceive Wessels. The learned court below denied the whole of the point without qualification. The proposition of the point required the judgment of the court upon a specified fact, to wit, that the defendant had said he could pay for the logwood, that it did not follow

from this that this declaration was a trick or an artifice to deceive Wessels even although Weiss's obligations exceeded his resources. As an abstract proposition we think this point was sound and should have been affirmed, even with the concluding part of the point, that there was no other evidence of an intent to deceive, as we have shown heretofore. It does not follow that if a business man's obligations exceed his resources and he ought to have known the fact, his assertion of his ability to pay for an intended purchase was a trick or an artifice to deceive the seller. It might be so or it might not, depending upon the other facts in the given case. But intrinsically, and by itself alone, it would not be, and we think the point as it stood should have been affirmed, or denied with a qualification, to wit, that while a person in business might know, or ought to know that his obligations exceeded his resources, yet he might also know that his obligations or a large part of them might be held by friends who would not interfere with his business, and therefore a mere declaration that he could pay for a proposed purchase would not be inconsistent with good faith; and on the other hand if he knew or ought to know that his obligations were pressing him and that his creditors were likely to seize the property purchased, then a declaration of ability to pay would be, or might be, evidence of an intent to deceive by a trick or artifice.

To our minds the evidence in this case does not indicate any intent on the part of Ernest Weiss to deceive Mr. Wessels by the declaration of his ability to pay for this logwood, and we therefore think the defendant's first point should have been affirmed, both as an abstract proposition and as a judgment upon the whole of the facts. We think that Ernest Weiss had good grounds to believe that neither his brothers nor Smith would interfere with his business by any sudden demand for their money. Smith had agreed that his judgment note was not to be entered as a judgment unless Weiss failed or declared himself insolvent. And we see no reason to doubt that all the notes given for this logwood would have been paid at maturity if Smith had not demanded his money and entered his judgment and issued execution thereon. There is not the slightest reason to believe that Weiss did not intend to pay for the logwood in full. His prompt payment of the first two notes at their ma-

turity was the best evidence that he intended to pay the whole four as they fell due, and the declaration of his ability to pay was not, in view of all the evidence in the case, any evidence of an intent to deceive Mr. Wessels by any trick or artifice or in any other way. The learned judge of the court below submitted the case to the jury, with great accuracy and clearness of statement, and if we thought there was evidence enough of a design to cheat Mr. Wessels to sustain a verdict in his favor, we would certainly affirm the judgment. He charged the jury that, " if Mr. Ernest Weiss, who had the personal dealings in this case, misrepresented to Wessels & Company in a material way, that is in a substantial way, his pecuniary condition, and they, relying upon his statement, sold him the logwood ; then, if this was done in such a way as showed a positive intention on his part to deceive them, and the plaintiffs suffered in consequence, you ought in that case, find a verdict for the plaintiff." This was entirely correct, and if there was any evidence more than a scintilla to show that there was any positive intention on the part of Ernest Weiss to deceive the plaintiffs in the declarations he made to them, we would sustain the judgment. But the whole testimony in the case, including that of the plaintiffs, impresses us strongly the other way, and we therefore feel constrained to reverse on the first assignment.

The second assignment has no merit. The parties agreed to substitute the proceeds of the sale for the goods sold, and to contest for the money and not for the goods. Of course it was perfectly competent for Mr. Wessels to be a bidder at such a sale without incurring any penalty of estoppel.

Judgment reversed.