## Greene, Appellants, *v.* Fondersmith.

|  200      625 |
| Case  2 |
| 209      482 |

*Sale—Rescission—Fraud—Statement to commercial agency.*

A contract of sale of goods will not be set aside on account of alleged false representations by the purchaser, where the only evidence on the subject is that the purchaser made a statement to a commercial agency showing assets considerably in excess of liabilities, and that some months afterwards when his property was sold under execution it failed to realize enough to pay his debts, and there is no evidence that the statement was in fact untrue, or that the purchaser had any knowledge of a condition of insolvency at the time he bought the goods.

Argued May 22, 1901.   Appeal, No. 314, Jan. T., 1900, by plaintiff, from judgment of C. P. Lancaster Co., Aug. T., 1895, No. 65, on verdict for defendant in case of J. H. and M. F. Greene v. Charles A. Fondersmith, Trustee.   Before McCollum, C. J., Mitchell, Fell, Mestrezat and Potter, JJ. Affirmed.

Feigned issue to determine title to 109 cases of tobacco.

The facts of the case are fully stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

*Error assigned* was in giving binding instructions for defendant.

*John A. Nauman*, and *B. F. Davis*, for appellants.—There was sufficient evidence of fraud to go to the jury: Cincinnati Cooperage Co. v. Gaul, 170 Pa. 545; Pyroleum Appliance Co. v. Williamsport Hardware, etc., Co., 169 Pa. 440; Penn Nat. Gas Co. v. Cook, 123 Pa. 183; Bughman v. Central Bank, 159 Pa. 94; Claster Bros. v. Katz, 6 Pa. Superior Ct. 487; Fuller v. Kelsey, 4 Brewster, 104; Stauffer v. Young, 39 Pa. 455; Painter v. Drum, 40 Pa. 467; Neff v. Landis, 110 Pa. 204.

*W. U. Hensel*, with him *A. F. Hostetter*, for appellee.—To carry the case to the jury, there must have been positive evidence that Hostetter knew he was insolvent at the time of the purchase: Ralph v. Fondersmith, 3 Pa. Superior Ct. 627.

There was no proof of the falsity of the statement: Ralph v. Fondersmith, 3 Pa. Superior Ct. 627.

Fraud is not to be presumed because a dealer fails who supposed himself solvent months before: Rodman v. Thalheimer, 75 Pa. 232; Smith v. Smith, Murphy & Co., 21 Pa. 367; Wessels v. Weiss Bros., 156 Pa. 591.

OPINION BY MR. JUSTICE POTTER, October 21, 1901:

This is a feigned issue, to determine the title to 109 cases of tobacco, being part of the goods sold by the plaintiffs to one Hostetter, in two lots, one upon March 1, 1895, and the other on March 23, 1895. The plaintiffs claim the right to rescind the contract of sale, upon the theory, that it was effected through the fraud of the purchaser. It was alleged that Hostetter, the vendee, procured the sale by misrepresentation of his financial condition. In July, 1894, he furnished a statement to a commercial agency showing in detail his assets and liabilities. It there appeared that his resources consisted of about $14,497 in cash, stock of goods on hand of about $45,000, open accounts over $66,000, and bills receivable about $85,000, ag-

gregating over $136,000. Against this, the statement showed liabilities of over $84,000, in the shape of bills payable and amounts due various creditors. This left a net excess of assets over liabilities of nearly $52,000. In addition to this, the statement showed a schedule of various items of real estate, and a life insurance policy, aggregating $20,000 more.

It seemed to be the practice of the commercial agency to express the pecuniary rating of the parties shown in their books, by letters and figures whose significance were set forth in an explanatory key of ratings. The figures for Hostetter in this instance were "D. 2." This seems to represent, according to the testimony, an estimated pecuniary strength of from $40,000, to $75,000; and a general credit rating of "Good." But the detailed statement was on file in the office of the agency, and was subject to the inspection and examination of any patron who chose to ask for it. The plaintiffs, therefore, either saw the detailed statement, or might have seen it had they so desired. No change was made, apparently, in this statement until the spring of 1895, at which time the sale of the tobacco was actually made by the plaintiffs to Hostetter. At that time, during a conversation between a representative of the plaintiffs' firm and Hostetter, reference was made to this statement, and Hostetter said that he was worth more money then, than at the time the statement was made. The sale then seems to have been concluded shortly afterwards, but, as said above, the goods were delivered in two lots, nearly four weeks apart, the latter delivery being on March 23. For these purchases he gave his notes, payable from three to five months after date. Some seven weeks afterwards, on May 14, Hostetter confessed judgment to various creditors, under which, execution was issued, and a levy made upon the property of Hostetter. Upon the trial of this issue in the court below, the judge gave binding instructions to the jury in favor of the defendant, and to this action of the court, the first nine assignments of error relate. In the opinion of the learned court, there was not sufficient proof to submit to the jury, of any conduct upon the part of the vendee, amounting to a false representation which induced a sale of the goods. As was said in Labe & Son v. Bremmer's Sons, 167 Pa. 18, "The right to rescind did not exist unless the sale was brought about by fraud." We have,

therefore, examined the testimony carefully to see if anything can be found to sustain the allegation of fraud. There is no evidence of any trick, artifice or false representation upon the part of the vendee, unless it be in connection with the statement as to his financial condition. In seeking to discredit this statement, we would naturally expect the plaintiff to offer evidence showing that the assets were less, or the debts greater, than as represented on the schedule; but we have looked in vain for any such testimony. There is nothing to show that the vendee had any knowledge that there was any misstatement in the report, if such there was. Common experience shows that business men naturally take an optimistic view of their business condition and prospects, and some allowance must be made for this well known tendency; but in this case there was a wide margin between the net amount of assets shown by the schedule, and the line of insolvency. This margin would have to be wiped out entirely before the vendee reached the condition of one unable to pay his debts. The theory of the plaintiff seems to be that the vendee must have been insolvent at the time of the sale, for the reason that some two months afterwards, when judgment was entered, and execution issued against him, his property, when sold at forced sale, failed to realize enough to pay his debts. This does not follow, however.

The language of this court in Wessells v. Weiss, 156 Pa. 596, is appropriate to the case in hand: " The solvency of a manufacturer or a merchant, who has debts and assets, unless the assets are of a fixed and stable character, and very largely exceed the liabilities is quite an uncertain factor, and very much a matter of opinion." And, again, in the same case: " Unless, therefore, there are convincing facts in evidence to show with clear certainty that the condition of insolvency was well known to the purchaser of goods when he asserted solvency as a means of procuring the sale of goods to himself, his assertion does not have that aspect of fraud, or artifice, or misrepresentation which is required to abrogate an executed contract. If an intending purchaser has a right to regard himself as solvent, and firmly believes that he is so, and, therefore, asserts his solvency to an intended seller who sells him goods, his assertion of his solvency is certainly not fraudulent, even though insolvency actually arises before payment for the goods is made."

This schedule now under consideration was before the Superior Court for examination, in Ralph v. Fondersmith, 3 Pa. Superior Ct., 625. That court then said: " In this case, there was no evidence adduced to show that the statement was not true in entirety and detail; that the purchases made were unusual in amount or value, as compared with his general business; or that the indebtedness represented by the execution claiming the property in dispute was not included in the schedule furnished by Hostetter."

We see nothing in the evidence now before us, to warrant any other conclusion with regard to the statement. We therefore agree with the learned court below, that there was not sufficient evidence, to justify submitting to the jury the question of the insolvency of the vendee at the time of the sale. These assignments of error are, therefore, overruled.

Neither do we find any merit in any of the remaining assignments of error, or anything in them which requires discussion. They are, therefore, overruled, and the judgment is affirmed.